UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

VASCO LEE HOWARD, III,

               Petitioner,

vs.                      Case No.  2:05-cv-21-FtM-29DNF

WALTER A. MCNEIL, Secretary, Florida
Department of Corrections,

               Respondent.[1]

_____

**OPINION AND ORDER**

**I. Status**

Petitioner, Vasco Lee Howard, (hereinafter "Petitioner" or "Howard"), who is proceeding *pro se* and *in forma pauperis*, initiated this action by filing a Petition for Writ of Habeas Corpus ("Petition," Doc. #1) pursuant to 28 U.S.C. § 2254 on January 13, 2005.[2]  Petitioner challenges his November 21, 2001 state court judgment of conviction for armed robbery entered in the

---

[1]The Supreme Court has made clear that there "is generally only one proper respondent to a given prisoner's habeas petition." Rumsfield v. Padilla, 124 S. Ct. 2711, 2717 (2004).  This is "'the person with the ability to produce the prisoner's body before the habeas court.'"  Id.  In this case, the proper party Respondent is the Secretary of the Florida Department of Corrections.  As such, the Court will substitute Walter A. McNeil, the current Secretary of the Department of Correction for respondent, J. Dixon, Warden, and dismiss the Attorney General of the State of Florida as a named respondent.

[2]The Petition (Doc. #1) was docketed and filed in this Court on January 18, 2005; the Court applies the "mailbox rule" and deems the Petition "filed on the date it was delivered to prison authorities for mailing."  Alexander v. Sec'y Dep't of Corr., 523 F.3d 1291, 1294 n.4 (11th Cir. 2008).

Twentieth Judicial Circuit Court, Lee County, Florida (case no. 98-3793CF) for which he was sentenced to thirty years imprisonment. Petition at 2.[3]  Although raised as a single ground, the Petition asserts several claims of ineffectiveness of trial counsel.  Id. at 5.  Specifically, Petitioner claims that his trial counsel was ineffective for:

> **Failing to file a motion to suppress "illegally gained evidence" pursuant to an "unconstitutional" search;**
>
> **Failing to file a motion to suppress the illegal "seizure of petitioner's person"; and**
>
> **Failing to impeach the victim "upon the lies he told."**

Id.  In compliance with the Court's Order (Doc. #6), Respondent filed a Response, Memorandum to the Petition on May 3, 2005 ("Response," Doc. #13).  Respondent submitted exhibits in support of his contentions (Exhs. ##1-38),[4] including a copy of transcript from the trial ("TT").  Petitioner filed a Reply to the Response on May 20, 2005 ("Reply," Doc. #18).  Petitioner subsequently filed a First and Second Supplement to Reply on February 1, 2007 (Docs. #27 and #28), and Exhibits in Support of Second Supplement on February 22, 2007 (Doc. #29).  See Order of Court dated February 22, 2007 (Doc. #30).  This case is now ripe for review.

---

[3]The page numbers referenced herein are to the page of the identified document as it appears on the Court's case management electronic computer filing system.

[4]The Court will hereinafter refer to the exhibits that are referenced in and submitted in support of the Response as "Exh."

## II. Procedural History

Petitioner was charged with robbery with a firearm, which occurred on November 28, 1998, at Wal-Mart in Lee County, Florida (Case No. 98-3793CF).   Petitioner was represented by court-appointed counsel, Ian Mann, Esq., and was found guilty of the charge after an October 8, 2001 jury trial.   On November 9, 2001, the trial court adjudicated Petitioner guilty consistent with the jury's verdict, and sentenced Petitioner as a habitual offender to thirty years of imprisonment.[5]

Petitioner filed a direct appeal and appellate counsel filed an <u>Anders</u>[6] brief, identifying two issues: 1) was it necessary for the state to introduce the actual gun into evidence in order to prove a charge of robbery with a firearm; and  2) whether the trial court erred when it struck several prospective jurors for cause. Exh. #1.   The appellate court advised Petitioner that he may file an additional brief if he chose to raise any additional issue on appeal.   Exh. #2.   Petitioner failed to file a *pro se* brief.   On

---

[5]The sentence ran consecutive to Petitioner's other sentence in case no. 98-3730CF, where Petitioner was charged with armed robbery on the same date at a Hess Mart (the "Hess robbery"). Petitioner was found guilty of the Hess robbery by a jury and was sentenced to twenty (20) years imprisonment on August 20, 2001.   On appeal, his conviction in the Hess robbery was reversed.   <u>Howard v. State</u>, 869 So. 2d 725 (Fla. 2d DCA 2004).   Eventually, Petitioner pled *nolo contendere* to the Hess robbery. Pursuant to a negotiated plea, Petitioner was sentenced to a 60-month sentence to run concurrent with his sentence in case no. 98-3793CF, the conviction which is the subject of this Petition.

[6]<u>Anders v. California</u>, 386 U.S. 738 (1967).

January 24, 2003, the appellate court *per curiam* affirmed the state judgment, without a written opinion in case no. 2D01-5283.  <u>Howard v. State</u>, 840 So. 2d 235 (Fla. 2d DCA 2003); Exhs. ##4-5. Mandate issued February 19, 2003.

On March 25, 2003, Petitioner filed a *pro se* motion for post conviction relief pursuant to Fla. R. Crim. P. 3.850 raising the following instances of ineffective assistance of trial counsel:

1.  Failure to investigate probable cause affidavit.

2.  Failure to impeach victim with inconsistent statements concerning:

    a. height of assailant
    b. description of firearm
    c. description of "get away" car
    d. photo line-up
    e. earring
    f. composite drawing.

3.  Failure to impeach victim with statement and deposition concerning:

    a. shown guns by brother
    b. color blind victim
    c. when gun first seen
    d. Charles Daniels.

4.  Failure to argue that victim did no describe Defendant concerning:

    a. weight
    b. height
    c. left handed
    d. earring in left ear
    e. full face
    f. size of linebacker.

5.  Failure to have lawyer-client relationship concerning:

    a. lesser included instructions

          b. stupid client
          c. predicted conviction
          d. sought payment from relative
          e. judge switch.

6.    Failure to call the following witnesses at Defendant's request to impeach Agent Purdy:

          a. Shirley Jackson
          b. Louise Annette Robertson
          c. Defendant felt forced to testify.

Id.   The State filed a response and supplemental response to Petitioner's rule 3.850 motion.  Exhs. #9, #18.  On June 8, 2004, the trial court, in denying Petitioner's rule 3.850 motion, expressly incorporated by reference the State's responses and exhibits.  Exh. #19.  Significantly, the trial court "concur[red] in the analysis of the State regarding each issue in the [Petitioner's] motion and adopt[ed] the arguments and citations in the response as its own." Id.

Petitioner appealed the trial court's denial of his rule 3.850 motion.  Exh. #20.  The State chose not file a response.  Exh. #21. On October 20, 2004, the appellate court *per curiam* affirmed without written opinion the trial court's order denying Petitioner's Rule 3.850 motion.  Howard v. State, 888 So. 2d 635 (Fla. 2d DCA 2004).  Exhs. ##22-23.  On November 24, 2006, Petitioner's motion for a rehearing was denied.  Exh. #24.  Mandate issued December 17, 2004.  Exh. #25.

## III.  Applicable Law

Petitioner filed his timely[7] Petition after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (1996). Consequently, post-AEDPA law governs this action. Abdul-Kabir v. Quarterman, 127 S. Ct. 1654, 1664 (2007);  Penry v. Johnson, 532 U.S. 782, 792 (2001); Davis v. Jones, 506 F.3d 1325, 1331, n. 9 (11th Cir. 2007).  Under AEDPA, the standard of review "is 'greatly circumscribed and highly deferential to the state courts.' Crawford v. Head, 311 F.3d 1288, 1295 (11th Cir. 2002)."  Stewart v. Sec'y Dep't of Corr., 476 F.3d 1193, 1208 (11th Cir. 2007).  See also Parker v. Sec'y Dep't of Corr., 331 F.3d 764 (11th Cir. 2003). AEDPA altered the federal court's role in reviewing state prisoner applications in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."  Bell v. Cone, 535 U.S. 685, 693 (2002).  The Court finds the following  aspects of the AEDPA relevant to this matter.

### Exhaustion

If a ground asserted by a petitioner warrants review by a federal court under § 2254, the petitioner must have first afforded the state courts an initial opportunity to address any federal

---

[7]Respondent concedes that due to Petitioner's collateral appeals, the Petition in this Court was timely filed.  Response at 5, n.3.  The Court agrees.

issues.   28 U.S.C. § 2254(b)(1)(A).   This imposes a "total exhaustion" requirement in which all the federal issues must have first been presented to the state courts.   Rhines v. Weber, 544 U.S. 269, 274 (2005).   "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999).   See also Henderson v. Campbell, 353 F.3d 880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.")(quoting Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001)); Duncan v. Henry, 513 U.S. 364, 365 (1995)("exhaustion of state remedies requires that petitioners 'fairly present federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights'").

A petitioner must present the same claim to the state court that he now requests the federal court to consider.   McNair v. Campbell, 416 F.3d 1291, 1302 (11th Cir. 2005)(citations omitted); Kelly v. Sec'y for the Dep't of Corr., 377 F. 3d 1317, 1343-44 (11th Cir. 2004).   Thus, the exhaustion requirement is not satisfied if the claims raised before the state court were not raised in terms of federal law.   Gray v. Netherland, 518 U.S. 152, 162-63 (1996); Jimenez v. Fla. Dep't of Corr., 481 F.3d 1337, 1342 (11th Cir. 2007).   With regard to claims of ineffectiveness of

trial counsel, a petitioner must have presented those claims to the state court "'such that a reasonable reader would understand each claim's particular legal basis and specific factual foundation.'" <u>Ogle v. Johnson</u>, 488 F. 3d 1364, 1368 (11th Cir. 2007)(citing <u>McNair v. Campbell</u>, 416 F.3d 1291, 1302 (11th Cir. 2005)).

If a petitioner fails to exhaust a claim, the court may dismiss the petition without prejudice to permit exhaustion, if appropriate. <u>Pliler v. Ford</u>, 542 U.S. 225, 227 (2004); <u>Rose v. Lundy</u>, 455 U.S. 509, 519-20 (1982). Alternatively, the court has the discretion to grant "a stay and abeyance to allow the petitioner to exhaust the unexhausted claim." <u>Ogle</u>, 488 F.3d at 1370 (citations omitted).

**Procedural Default**

"A claim is procedurally defaulted if it has not been exhausted in state court and would now be barred under state procedural rules." <u>Mize v. Hall</u>, 532 F.3d 1184, 1190 (11th Cir. 2008). "The doctrine of procedural default was developed as a means of ensuring that federal habeas petitioners first seek relief in accordance with established state procedures." <u>Henderson</u>, 353 F.3d at 891 (quoting <u>Judd v. Haley</u>, 250 F.3d 1308, 1313 (11th Cir. 2001)). A procedural default may also result from non-compliance with state procedural requirements. <u>See</u> <u>Coleman v. Thompson</u>, 501 U.S. 722, 729-30, <u>reh'g</u> <u>denied</u>, 501 U.S. 1277 (1991).

> Federal courts are barred from reaching the merits of a state prisoner's federal habeas claim where the petitioner has failed to

> comply with an independent and adequate state
> procedural rule.  <u>Wainwright v. Sykes</u>, 433
> U.S. 72, 85-86, 97 S. Ct. 2497, 53 L. Ed. 2d
> 594 (1977).  When a state court correctly
> applies a procedural default principle of
> state law, federal courts must abide by the
> state court decision, <u>Harmon v. Barton</u>, 894
> F.2d 1268, 1270 (11th Cir. 1990), but only if
> the state procedural rule is regularly
> followed, <u>Ford v. Georgia</u>, 498 U.S. 411, 424,
> 111 S. Ct. 850, 112 L. Ed. 2d 935 (1991).

<u>Siebert v. Allen</u>, 455 F.3d 1269, 1271 (11th Cir. 2006), <u>cert. denied</u>, 127 S. Ct. 1823 (2007); <u>see also</u> <u>Baldwin v. Johnson</u>, 152 F.3d 1304, 1317 (11th Cir. 1998) (finding that federal courts may not review a claim that a petitioner procedurally defaulted under state law if the last state court to review the claim states clearly and expressly that its judgment rests on a procedural bar, and the bar presents an independent and adequate state ground for denying relief), <u>cert. denied</u>, 526 U.S. 1047 (1999).  This is true where the appellate court silently affirms the lower court procedural bar since federal courts should not presume an appellate state court would ignore its own procedural rules in summarily denying applications for post conviction relief.  <u>Tower v. Phillips</u>, 7 F.3d 206, 211 (11th Cir. 1993).

A procedural default for failing to exhaust state court remedies will only be excused in two narrow circumstances.  First, a petitioner may obtain federal habeas review of a procedurally defaulted claim if he shows both "cause" for the default and actual "prejudice" resulting from the asserted error.  <u>House v. Bell</u>, 547 U.S. 518, 536-37 (2006); <u>Mize</u>, 532 F.3d at 1190.  "Cause"

ordinarily requires a petitioner to demonstrate "that some objective factor external to the defense impeded the effort to raise the claim properly in the state court." Henderson v. Campbell, 353 F.3d 880, 892 (11th Cir. 2003) (quoting Wright v. Hopper, 169 F.3d 695, 703 (11th Cir. 1999)).  Constitutionally ineffective assistance of counsel can constitute cause if that claim is not itself procedurally defaulted. Edwards v. Carpenter, 529 U.S. 446, 451-52 (2000).  To show "prejudice," a petitioner must demonstrate that there is "at least a reasonable probability that the result of the proceeding would have been different." Henderson, 353 F.3d at 892.

Second, under exceptional circumstances, a petitioner may obtain federal habeas review of a procedurally defaulted claim, even without a showing of cause and prejudice, if such review is necessary to correct a fundamental miscarriage of justice. House, 547 U.S. at 536; Edwards, 529 U.S. at 451; Henderson, 353 F.3d at 892.  This exception is only available "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent."  Henderson, 353 F.3d at 892. See also House, 547 U.S. at 536-37 (prisoner asserting actual innocence must establish that, "in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt") (citation omitted).

**Deference to State Decision**

-10-

Where a petitioner's claim raises a federal question, was exhausted, is not procedurally barred, and was adjudicated on the merits in the state courts, the federal court must afford a high level of deference to the state court's decision. See, e.g., Ferguson v. Culliver, 527 F.3d 1144, 1146 (11th Cir. 2008). Habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). See Brown v. Payton, 544 U.S. 133, 141 (2005); Price v. Vincent, 538 U.S. 634, 638-39 (2003). A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants deference. Ferguson, 527 F.3d at 1146; Wright v. Sec'y for the Dep't of Corr., 278 F.3d 1245, 1253-54 (11th Cir. 2002). See also Peoples v. Campbell, 377 F.3d 1208, 1227 (11th Cir. 2004), cert. denied, 545 U.S. 1142 (2005).

"Clearly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issues its decision. Carey v. Musladin, 549 U.S. 70, 127 S. Ct. 649, 653 (2006)(citing Williams v. Taylor, 529 U.S. 362, 412 (2000)). In cases where nothing in the Supreme Court's

-11-

jurisprudence addresses the issue on point or the precedent is ambiguous and gives no clear answer to the question, it cannot be said that the state court's conclusion is contrary to, or constitutes an unreasonable application of, "clearly established Federal law." Wright v. Van Patten, 128 S. Ct. 743, 747 (2008); Mitchell v. Esparza, 540 U.S. 12, 15-16 (2003).

A state court decision can be deemed "contrary to" the Supreme Court's clearly established precedents within the meaning of § 2254(d)(1) only if: (1) the state court applies a rule that contradicts the governing law as set forth in Supreme Court cases, or (2) the state court confronts a set of facts that is "materially indistinguishable" from those in a decision of the Supreme Court and yet arrives at a different result. Brown, 544 U.S. at 141; Mitchell, 540 U.S. at 15-16. Further, it is not mandatory for a state court decision to cite, or even to be aware of, the relevant Supreme Court precedents, "so long as neither the reasoning nor the result . . . contradicts them." Early v. Parker, 537 U.S. 3, 8 (2002); Mitchell, 540 U.S. at 16.

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle but applies it to the facts of the petitioner's case in an objectively unreasonable manner, Brown, 544 U.S. at 134; Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000), cert. denied, 534 U.S. 956 (2001); or, "if the state court either unreasonably extends a legal principle from

[Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." <u>Bottoson</u>, 234 F.3d at 531 (quoting <u>Williams</u>, 120 S. Ct. at 1520).  The "unreasonable application" inquiry "requires the state court decision to be more than incorrect or erroneous"; it must be "objectively unreasonable." <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75-77 (2003) (citation omitted); <u>Mitchell</u>, 540 U.S. at 17-18.  Depending upon the legal principle at issue, there can be a range of reasonable applications.  <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 663-64 (2004).  Thus, the state court's decision is not subject to federal review *de novo*; rather, § 2254(d)(1) relief is only available upon a showing that the state court decision meets the "objectively unreasonable" standard.  <u>Id.</u> at 665-66.

A § 2254 petitioner can also obtain relief by showing that a state court decision "was based on an unreasonable determination of the facts in light of the evidence presented."  28 U.S.C. § 2254(d)(2).  Where the credibility of a witness is at issue, relief may only be granted if it was unreasonable, in light of the evidence presented, for the state court to credit the testimony of the witness in question.  <u>Rice v. Collins</u>, 546 U.S. 333, 338 (2006).  Additionally, a factual finding by a state court is presumed to be correct and a petitioner must rebut this "presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); <u>Miller-El v. Dretke</u>, 545 U.S. 231, 240 (2005);

Henderson, 353 F.3d at 890-91.   This statutory presumption of correctness, however, "applies only to findings of fact made by the state court, not to mixed determinations of law and fact." Parker v. Head, 244 F.3d 831, 836 (11th Cir.), cert. denied, 534 U.S. 1046 (2001) (citation omitted).   An ineffective assistance of counsel claim is a mixed question of law and fact; therefore, the presumption does not apply and such claims are reviewed de novo. Rolling v. Crosby, 438 F.3d 1296, 1299 (11th Cir.), cert. denied sub nom. Rolling v. McDonough, 126 S. Ct. 2943 (2006).

Finally, if the state court fails or declines to rule on the merits of a particular claim raised before it, that claim falls outside of the scope of § 2254(d)(1)'s restrictions and the reviewing federal habeas court owes no deference to the state court decision when evaluating that claim.   Davis v. Sec'y Dep't of Corr., 341 F.3d 1310, 1313 (11th Cir. 2003).

### Ineffective Assistance of Counsel

Ineffective assistance of counsel claims are reviewed under the standards established by 28 U.S.C. § 2254(d). Newland v. Hall, 527 F.3d 1162, 1183 (11th Cir. 2008).   Post-AEDPA, the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984), remains applicable to the claims of ineffective assistance of counsel raised in this case.   Newland, 527 F.3d at 1184.   In Strickland, the Supreme Court established a two-part test to determine whether a convicted person is entitled to habeas relief on the grounds that

-14-

his or her counsel rendered ineffective assistance: (1) whether counsel's representation was deficient, i.e., "fell below an objective standard of reasonableness" "under prevailing professional norms," which requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"; and (2) whether the deficient performance prejudiced the defendant, i.e., there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different, which "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 688.  Petitioner bears a heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable." Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006), cert. denied sub nom. Jones v. Allen, 127 S. Ct. 619 (2006).  A Court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (quoting Strickland, 466 U.S. at 690), applying a "highly deferential" level of judicial scrutiny. Id.  A court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.  An attorney is not ineffective for failing to raise or preserve a meritless issue. Ladd v. Jones, 864 F.2d 108, 109-10 (11th Cir.), cert. denied sub

nom. Ladd v. Burton, 493 U.S. 842 (1989); United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992) ("a lawyer's failure to preserve a meritless issue plainly cannot prejudice a client"). "To state the obvious: the trial lawyers, in every case, could have done something more or something different.  So, omissions are inevitable.  But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000)(quoting Burger v. Kemp, 483 U.S. 776, 794 (1987)).

### IV. Findings of Fact and Conclusions of Law

This Court has carefully reviewed the record and, for the reasons set forth below,  concludes no evidentiary proceedings are required in this Court. Schriro v. Landrigan, ___ U.S. ___, 127 S. Ct. 1933, 1939-40 (2007).  Petitioner does not proffer any evidence that would  require an evidentiary hearing, Chandler v. McDonough, 471 F.3d 1360 (11th Cir. 2006), and the Court finds that the pertinent facts of the case are fully developed in the record before the Court.  Schrio, 127 S. Ct. at 1940; Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004).

### Grounds I and II

Petitioner asserts that trial counsel was ineffective for failing to file a motion to suppress "illegally gained evidence" gained by an "unconstitutional search" of petitioner's girlfriend's

apartment where petitioner was living; and, the illegal "seizure of petitioner's person because of the word of an unarmed robber" who only identified his accomplice as "Bear" who lived at the Tiffany Bear Apartments.  Petition at 5.  Petitioner, in his chronology of facts, also imputes ineffectiveness on counsel for his failure to file a motion to suppress the victim's out of court identification of petitioner.  Id. at 8.

Petitioner premises his claim that counsel was ineffective for failing to move to suppress the "illegal evidence" on the basis that Agent Purdy entered his girlfriend's apartment without his girlfriend's permission.  Id. at 6.  As a result, Howard contends that trial counsel should have sought to suppress the following evidence, which Howard contends was obtained during the illegal search: testimony of police that they found Howard hiding in his girlfriend's apartment; testimony of police that Howard gave police a false name; Howard's spontaneous statements[8] to police; and Howard's photograph that was used in a photo array shown to the victim.  Id. at 7.  Although not set forth with specificity, Howard also argues that no probable cause existed for his arrest.  Id. at 5.  In his Reply, Howard states that Agent Purdy, acted upon information from Daniels, who is not a "trustworthy criminal" to obtain the names of Daniels' accomplices.  Reply at 3.  After

---

[8]After being apprehended by police and shown the gun, Howard stated "Is that that [sic] jammed gun? We weren't going to hurt anybody with it."  Petition at 7.

Daniels identified one of his accomplices as "Bear" who lived at Tiffany Village, Purdy then contacted the Fort Myers Police Department and obtained a list of six individuals who go by the moniker "Bear." Id.  Howard claims that Purdy only got the description of three of the six individuals on the list from the Fort Myers Police Department before the police were dispatched to the Tiffany Village to locate and arrest "Bear." Id. at 4-5.

The State in its Response correctly pointed to Strickland v. Washington, 466 U.S. 668 (1984) as the controlling law governing ineffective assistance of counsel claims. Exh. #18 at 3.  The post conviction court in denying Petitioner's claim of ineffectiveness regarding these grounds adopted the State's response as follows:

> Defendant claims counsel was ineffective for failure to move for suppression of evidence. He argues that there was no probable cause for his arrest, which resulted in admissions linking him to the Wal-Mart robbery. According to Defendant, the affidavit was based solely on Charles A. Daniels' "falsified" statement that Defendant committed robberies of the Hess Mart and Wal-Mart with him. The booking sheet and probable cause affidavit in the court file refute Defendant's claim.  According to these documents, Agent Purdy reviewed the store surveillance tape and recognized Daniels, who admitted that he was at Wal-Mart, and that one of the men with him was "Bear" from Tiffany Village.  "Bear", aka Vasco Howard III, was subsequently located in Tiffany Village. After Miranda warnings, Defendant admitted being at the Wal-Mart with several others, but denied possessing a gun.  When shown a photographic line-up of six pictures, victim Richard Gossett immediately identified Defendant, positive that he was the gunman.  The first appearance sheet in the court file shows Lee County Judge Edward Volz found probable cause on December 1, 1998 to hold Defendant for armed robbery with a firearm.  Although claiming counsel was negligent for failing to file a motion to suppress evidence, Defendant does not specify what evidence was subject to suppression.  The State

> notes that counsel was successful in obtaining suppression of Defendant's statement. Counsel also objected to photographs of the firearm found in the car seen in store surveillance tape, and the photo-lineup during trial. Counsel cannot be deemed ineffective for failing to prevail on a meritless issue. See Teffeteller v. Duager, 734 So.2d 1009 (Fla. 1999).

Exh. #18 at 3.

"To obtain relief where an ineffective assistance claim is based on counsel's failure to file a timely motion to suppress, petitioner must prove: (1) that counsel's representation fell below an objective standard of reasonableness, (2) that the Fourth Amendment claim is meritorious, and (3) that there is a reasonable probability that the verdict would be different absent the excluded evidence." Zakrsewski v. McDonough, 455 F.3d 1254, 1260 (11th Cir. 2006) (citing Kimmelman, 477 U.S. at 375). Generally, police officers must obtain a warrant supported by probable cause to justify a search under the Fourth Amendment, unless there is consent. United States v. Magluta, 418 F. 3d 1166, 1182 (11th Cir. 2005).

At the outset, the Court notes that Petitioner's counsel was successful in suppressing Howard's taped statement made to police after his arrest and during his interrogation. See Exhs. ##26-27. Based upon a review of the record, the Court finds that Petitioner does not set forth a factual basis to support his underlying Fourth Amendment claims raised herein. According to record, Agent Purdy investigated the Wal-Mart robbery and obtained a videotape from a surveillance camera. Purdy also spoke with Mr. Gossett, the victim

-19-

of the robbery, to obtain a physical description of the robbers. Purdy was called the same evening to investigate a second robbery at a Hess Mart gas station.  Based upon review of the video from the Hess station, Purdy determined that the vehicles in the two robberies were the same.  Also, from the Hess Mart video, Purdy was able to identify "Charles Daniels."  During Purdy's interview with Daniels, Daniels incriminated himself in the robberies.  Daniels then told Purdy the location of the vehicle used in the robberies, as well as the name of one of the other individuals involved in the robberies who he only knew as "Bear."

After contacting the Fort Myers Police Department, Purdy learned that Vasco Howard went by the moniker "Bear" and lived at Tiffany Village.  When Purdy arrived at Tiffany Village, he located the vehicle used in the robbery.  After obtaining consent from the owner of the vehicle, Purdy conducted a search of the vehicle and located a jacket that had a Wal-Mart price tag still on it, as well as a gun.  While processing the gun as evidence, Purdy could not remove the magazine because it was jammed.  A resident at Tiffany Village told Purdy the apartment number where they might be able to find Howard.  Purdy, along with other officers, went to the apartment, which was leased to Shirley Jackson.  Ms. Jackson opened the door when Purdy knocked and, in response to whether Vasco Howard was there, she answered "no."  Purdy asked Ms. Jackson for permission to enter the premises, and Ms. Jackson "granted it." Howard was found in a back bedroom hiding "between some

mattresses." When asked his name, Howard told them his name was "Eddie Burton." Subsequently, Purdy was approached by another female who told Purdy she was Vasco Howard's mother. When shown the gun from the vehicle, Howard stated "is that that [sic] jammed gun, we weren't going to hurt anybody with it." Purdy then took a Polaroid photograph of Howard that was used in a photo array subsequently shown to the victim, Gossett. See TT at 127-169.

A meritorious Fourth Amendment issue is a necessary prerequisite for Petitioner's Sixth Amendment claim to succeed. Huynh v. King, 95 F.3d 1052, 1058 (11th Cir. 1996)(citing Kimmelman v. Morrison, 477 U.S. 365, 382 (1986)). Here, the Court finds that a reasonably competent counsel would have concluded that Ms. Jackson consented to the search of her apartment, where Petitioner was eventually located.[9] Thus, Petitioner cannot show deficient performance by trial counsel.

Petitioner states that "[h]ad counsel filed a motion to suppress there wouldn't have been a trial and if so the outcome

---

[9]Petitioner raised the same issue in a motion to suppress in his Hess Mart robbery case (Case No. 98-3739CFB). Exh. #32. After an evidentiary hearing on the motion, the trial court found that:

> The only evidence before the court was that [Ms. Jackson] opened the door for the police and she indicated by a hand wave to come on in. There is no other evidence contradicting this at all. Therefore, law enforcement was given proper permission to enter and search the apartment and there is no basis for suppressing the evidence.

Exh. #34. Further, the court found that Howard did not have an expectation of privacy in the apartment unit. Id.

would have been different."   Petition at 6.   Petitioner
misapprehends the prejudice prong of the Strickland analysis.
Contrary to Petitioner's conclusory assertion, even if the
petitioner demonstrates a meritorious Fourth Amendment claim, it is
not axiomatic that the petitioner will prevail on his Sixth
Amendment claim.   Huynh v. King, 95 F.3d at 1058.   Rather, a
petitioner must still demonstrate prejudice as a result of the
deficient behavior. Petitioner does not make a showing that
counsel's errors, even if proven, "were so serious as to deprive
the defendant of a fair trial, a trial whose result is reliable."
Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)(internal quotations
and citations omitted).

    Similarly, Petitioner provides no factual predicate to support
his contention that officers did not have sufficient probable cause
to arrest him.   "[T]he test to be applied in a federal habeas court
in testing the legality of an arrest is federal probable cause."
Paige v. Potts, 354 F.2d 212, 214 (5th Cir. 1965).[10]   An arrest
without probable cause violates the Fourth Amendment.   Madiwale v.
Savaiko, 117 F.3d 1321, 1324 (11th Cir. 1997).   Probable cause
exists "if the facts and circumstances within the collective
knowledge of the law enforcement officials, of which they had
reasonably trustworthy information, are sufficient to cause a

---

    [10]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.
1981) (en banc) the Eleventh Circuit adopted as binding precedent
all the decisions of the former Fifth Circuit handed down prior to
the close of business on September 30, 1981.

person of reasonable caution to believe that an offense has been or is being committed" by the person arrested. _Id._ (quoting _United States v. Jimenez_, 780 F. 2d 975, 978 (11th Cir. 1986)); _Beck v. Ohio_, 379 U.S. 89, 91 (1964). "Because sufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment, probable cause itself is a doctrine of reasonable probability and not certainty. _Craig v. Singletary_, 127 F.3d 1030, 1041 (11th Cir.1997) (citations and internal quotations omitted). As a general rule, the confession of a co-defendant that he and the suspect committed the crime is sufficient to establish probable cause. _Id._ at 1045. It is not insignificant that Daniels incriminated not only Howard, but also himself of the robberies, "thus bringing to bear notions of reliability associated with the statement against penal interest." _Id._ Applying these principles to this case, the Court finds that based upon the record a reasonable attorney could conclude that Agent Purdy, acting upon the information supplied by Daniels, _inter alia_, did have sufficient probable cause to arrest Petitioner.

Petitioner did not raise a claim that counsel was ineffective for failing to file a motion to suppress the victim's out of court identification of Howard in his Rule 3.850 motion. Consequently, this claim is procedurally barred. _Mize v. Hall_, 532 F.3d 1184, 1190 (11th Cir. 2008). Petitioner has not shown either cause or actual prejudice to excuse his default. _Henderson v. Campbell_, 353 F.3d 880, 892 (11th Cir. 2003). Furthermore, Petitioner does not

show that he is entitled to the fundamental miscarriage exception. Thus, the Court finds Petitioner's this ground is procedurally barred.

Upon a thorough review of the record and the applicable law, it is clear that Petitioner is not entitled to relief on the basis of this claim because the State courts' adjudications of the claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings. Consequently, the Court will deny Petitioner's grounds of trial counsel's ineffectiveness for failing to file a motion to suppress evidence  obtained during the search of Howard's girlfriend's apartment and lack of probable cause for Howard's arrest.

**Ground III**

Petitioner claims defense counsel was ineffective for failing "to impeach the victim upon the lies he told in supporting the State's evidence." Petition at 5. Petitioner details a number of alleged inconsistencies between the victims' testimony at trial and his earlier statement to police and deposition testimony, and faults his counsel for failing to point out these inconsistencies to the jury. Id. at 9-10.

The post conviction court in denying Petitioner's claim of ineffectiveness on the various alleged inconsistencies adopted the

State's exhaustive response on each of the alleged inconsistencies

as follows:

> Defendant claims counsel was ineffective for failure to impeach victim Gossett with his inconsistent statements. The State submits that it is the jury's function to determine witness credibility.  Whether a witness made inconsistent statements is one factor, among others, to be considered in making this determination.  See Florida Standard Jury Instructions in Criminal Cases, 2.04 Weighing the Evidence.
>
> The trial transcript shows counsel's concern that the Jury might perceive his efforts to impeach Gossett as an attack on a sympathetic victim, which would not be in his client's best interest.  The State submits Defendant's claim that counsel did not raise certain issues in cross-examination to impeach the victim must be considered in light of counsel's stated need for delicacy; that it would not be in his client's interest to "really go after him." The law recognizes a "wide range" of reasonable professional assistance. A court must avoid second-guessing trial strategy. Accordingly, Defendant must overcome a "strong presumption" that his counsel's actions constituted reasonable trial strategy under the circumstances. Sanders v. Trickey, 875 F.2d 205 (8th Cir. 1989), citing to Strickland, *supra*.
>
> During trial Defendant expressed dissatisfaction with counsel.  In an unsuccessful attempt to represent himself for the remainder of the trial, Defendant specifically argued Gossett's inconsistent statements with regard to his description of the getaway car, and whether Defendant was wearing an earring:
>
>> The victim himself said it was a two-door car. He was just shown a four-door he identified. I can prove by these papers here alone that the victim said the guy had an earring in his left ear.  Here I have located an earring only in my right ear. I can prove by these papers that he indicated that the guy was left-handed. Here I am right-handed all my life. I can prove that the victim said when the gun was pointed at him, he was inside the Wal-Mart at the Garden Center and he know the guy as he backed out the double doors - you know, the

> double doors come two and they open up for you
> - and he backed out the double doors, but now
> he indicated he was at the Garden Center.

The State submits Defendant's claim that counsel was
ineffective for "failing" to raise certain issues on
cross-examination in an effort to impeach a somewhat
mentally slow and traumatized victim must be considered
in light of all the evidence and counsel's stated
strategy of delicacy.

## A. Height of Assailant

According to the booking sheet, Defendant is 6' tall and
medium build. Defendant claims counsel was ineffective
for failure to cross-examine Gossett about inconsistent
statements concerning his assailant's height: in his
police statement, in deposition, and at trial. In
Gossett's police statement, he described the gunman as
6'3" or 6'4", in deposition as 6', and at trial as 6'2".
Defendant claims that, "due to the negligence of my
attorney the jury was never able to properly evaluate the
[strength] of his identification."  But the victim's
description of his assailant's height was not the only
identification evidence before the jury.  Surveillance
videotape from Wal-Mart was published to the jury.  Agent
Purdy recognized Daniels in the video, which also showed
a vehicle connected with the robbery.  Daniels told Purdy
that "Bear" was with him at the Wal-Mart robbery.
Although there were five other persons known to have that
nickname, Defendant was the only one who fit the physical
description and lived in Tiffany Village.  Acting on
information from Daniels, Purdy located the vehicle used
in the robbery and captured on video, an "old beat up
Plymouth Acclaim" belonging to Louise Robertson, in
Tiffany Village.  Purdy obtained Robertson's permission
to search the vehicle.  He found a black Buccaneers NFL
jacket with a Wal-Mart price tag still attached, and a
non-functioning firearm in the trunk.  Counsel objected
to photographs of the firearm being admitted into
evidence.  Purdy went to the Tiffany Village residence of
Shirley Jackson.   She gave permission to search and
Defendant was located between some mattresses on the
floor of a rear bedroom. Defendant gave his name as
"Eddie Burton", but his mother identified him as Vasco
Howard.  Defendant volunteered: "the gun was jammed and
[they] weren't going to hurt anyone with it."
Defendant's booking photo was included in a six-picture
photo line-up.   Gossett immediately pointed to

-26-

Defendant's photo and identified him as the gunman. Counsel objected to the line-up as suggestive because Defendant was the only person wearing a red jail jumpsuit. In addition to the photo line-up, a composite picture of the gunman, based on Gossett's description the night of the robbery, was published to the jury.

The State submits that, in light of all the identification evidence, counsel's "failure" to show that the victim's subjective assessment of Defendant's height deviated by up to 4 inches does not meet the requirements of showing of prejudice in accordance with <u>Strickland</u>, *supra*.

## B. Description of Firearm

Gossett told Purdy that the gunman had a black 45, and pointed it right between his eyes. In deposition, Gossett sald he was not familiar with guns, and didn't think he could tell a revolver from an automatic, but he knew it was real because it was heavy when he felt it at his temple. During trial, Gossett testified: "He took the gun out, pointed it to my head . . . I wet my pants at the time." Gossett made an in-court identification of Defendant as the person who pointed the gun at him. On cross-examination counsel asked Gossett if he remembered giving more than one statement at different times. Gossett replied: "No, I do not. I gave the police the statement I just gave you."

## C. Description of Getaway Car

Defendant claims counsel's failure to confront the victim with his deposition description of the getaway car as a "big 2 door Chevrolet" when he described it as a "midsize 4 door Dodge" at trial denied him effective assistance of counsel. In deposition, Gossett said there five perpetrators: a heavyset woman in a polka-dot dress with a cart full of merchandise, a woman in a suit, a man in a Miami Dolphins T shirt, a man in a Pittsburgh Steelers T-shirt with a gun, and a man in a white shirt, who was missing two teeth. There were two cars, one of which Gossett did not see. He saw the heavyset woman and the man with the gun get into a black car, which he described as an old, beat up, black, two-door Chevrolet. Gossett identified a photograph of the car searched in Tiffany Village as the one used in the robbery. The State is unable to find in Gossett's testimony where he describes

the getaway car as "a mid-size 4 door Dodge" as Defendant claims.  In light of the evidence in this case, the State submits there has been no showing that counsel was ineffective, or that Defendant was prejudiced as required by Strickland, *supra*.

**D. Photo Line-up**

Defendant claims counsel was ineffective for failing to impeach the victim at trial with his previous testimony concerning the photo line-up.  When shown six-picture line-up, Gossett selected number two.  In deposition, Gossett remembered being shown three pictures and picking out the third.  In both deposition, and at trial Agent Purdy said he showed Gossett a six-person line-up and he immediately pointed to photo number two and said "that's him."

The evidence is consistent that Gossett choose [sic] Defendant's picture without hesitation.  In light of all the evidence, counsel's "failure" to impeach the victim with poor recollection six months later of how many photographs the police showed him does not meet the requirements of Strickland, supra.  And see Teffeteller, *supra*.

**E. Earring**

Defendant claims counsel was ineffective for failing to impeach the victim with inconsistent statements concerning whether the gunman wore an earring.  The State submits that Gossett said nothing about an earring in his original police statement, but consistently maintained that he got a good look at the gunman's face and would never forget it.  The State submits that, in light of all the evidence, counsel's "failure" to impeach the victim with his inconsistent statements about Defendant wearing an earring does not meet the requirements of Strickland, *supra*.

**F. Composite Drawing**

Defendant claims counsel was ineffective for failure to ask the jury to compare the composite drawing to Defendant's booking photo.  A composite picture of the gunman, based on Gossett's description the night of the robbery, was admitted and published to the jury without objection.  A photograph taken of Defendant when he was

arrested the same day was also admitted and published
without objection.   The jury had the opportunity to
compare and evaluate the exhibits in the context of all
the testimony and evidence.   The State submits that
counsel's "failure" to ask the jury to compare the two
exhibits does not meet the requirements of <u>Strickland</u>.
The issue of whether there is sufficient credible
evidence to support a guilty verdict is not properly
raised in a 3.850 motion.   <u>Jackson</u>, *supra*.

## III.  Failure to Impeach Victim With Statement and Deposition.

### A. Shown Guns by Brother

Defendant claims counsel was ineffective for failing to
confront the victim with a lie.  According to Defendant,
Gossett said at trial that his police statement, in which
he described the gun as a 45 caliber, was made before his
brother showed him guns.  According to Defendant, Gossett
said in his police statement that his brother had shown
him his gun collection.

According to the record, on direct examination Gossett
testified that:  he told police he saw "a gun with a
black handle"; and "I don't know guns from anything."
Under cross-examination, Gossett said that, while his
brother was an expert on guns, he knows nothing about and
wants nothing to do with them.  Counsel referred Gossett
to his statement wherein he told police the gun was a 45
caliber.  The State can find nothing in Gossett's police
statement wherein he said his brother had shown him his
gun collection, as alleged by Defendant.  Under cross-
examination, Gossett explained he told police the gun was
a 45 because of what he saw on TV.  The record rebuts
Defendant's allegation of what statements the victim made
and when he made them, and the claim that counsel failed
to impeach the victim with conflicting statements about
the gun.   The issue of whether there is sufficient
credible evidence to support a guilty verdict is not
properly raised in a 3.850 motion.  <u>See</u> <u>Jackson</u>, supra.
Counsel cannot be deemed ineffective for failing to
prevail on a meritless issue.  <u>See</u> <u>Teffeteller</u>, *supra*.

### B. Colorblind Victim

Defendant claims counsel was ineffective in failing to
argue that the victim described himself as colorblind in

both his police statement and deposition, but testified
at trial that he just found out a month ago that he was
colorblind.  At the end of his police statement, Gossett
admitted to being colorblind, but said that it did not
affect his ability to identify the perpetrators.  The
deposition  includes  no  mention  of  Gossett  being
colorblind.  The trial record shows the prosecutor asked
Gossett if he had difficulty seeing color.  Gossett
replied: "Yes, I do, I'm color-blind because I -- my eye
doctor told me a month ago when I went to the eye doctor
he said I was color-blind.  He showed me some colors."
When counsel cross-examined Gossett, he asked him if he
was able to tell what color shirts any of the men in the
photo-lineup were wearing.  Gossett admitted that the one
he identified was wearing red.   The State submits that
the issue was whether the photo lineup was suggestive and
resulted in Gossett's selection of Defendant because he
was the only person in a red shirt. Counsel cross-examined and argued the issue of victim's colorblindness in
this context. Defendant has failed to meet the _Strickland_ standard,
_supra_. See _Teffeteller_, _supra_.

**C. When Gun First Seen**

Defendant claims counsel was ineffective for failure to
impeach Gossett with inconsistent statements concerning
when he first saw the gun; specifically to contrast
Gossett's police statement that the gunman removed the
gun from his pocket with his trial testimony that he
didn't see the gun until the gunman backed out the gate.

In his police statement, Gossett said he felt the gun
held to his head, then saw it pointed at him as the
gunman fled.  In deposition, Gossett's description of the
events was similar.  At trial, Gossett said he was
checking sales slips for outgoing merchandise in the
Garden Center when a colored gal came out the door with
a buggy full of clothes and began to run.  When he gave
chase, this guy came up behind him, caught him, and put
his arms around Gossett's neck.  "He put his arm like
this around my neck and he took a gun out and pointed it
at my head and said to me if you take another step, I'll
blow your head off."  The trial transcript shows counsel
cross- examined Gossett concerning where he first saw the
gun.  The State submits that, given the witness' level of
intelligence, and manner in which he described what he
experienced as well as what he observed in a traumatic
situation, counsel did not fall below the _Stickland_ [sic]

standard, supra, in his cross-examination of Gossett on this issue.  See Teffeteller, *supra*.

Ex. 18, pgs. 4-7.

The state further addressed Howard's claim faulting counsel regarding the victim's description, responding as follows:

**IV. Failure to Argue That Victim Did Not Describe Defendant.**

Defendant claims counsel was ineffective for failing to argue that Gossett did not describe Defendant.  The State submits that his argument goes to sufficiency of evidence and is not properly raised in a motion pursuant to rule 3.850.  See Jackson, supra.  Nonetheless, the State will discuss the record.

As stated supra, the victim's description of his assailant's height was not the only identification evidence before the jury.  Surveillance videotape from Wal-Mart was admitted and published to the jury.  Agent Purdy recognized Charles Daniels, and saw a vehicle connected with the robbery on the tape.  Daniels said "Bear" was with him during the robbery.  Defendant was the only "Bear" who fit the physical description and lived in Tiffany Village.  The robbery vehicle was located at Tiffany Village with a black Buccaneers NFL jacket with a Wal-Mart price tag still attached, and a non-functioning firearm in the trunk.  Defendant was found in Tiffany Village apartment, between some mattresses on the floor of a rear bedroom.  Defendant gave his name as "Eddie Burton," before his mother identified him as Vasco Howard.  Defendant volunteered that: "the gun was jammed and [they] weren't going to hurt anyone with it."  After arresting Defendant, Purdy showed a photo line-up to Gossett, who immediately pointed to Defendant's photo and identified him as the gunman.  In addition to the photo line-up, a composite picture of the gunman based on Gossett's description the night of the robbery was published to the jury.

**A. Weight**

According to the booking sheet, Defendant is medium from behind and build.  Gossett testified that the robber who held him put a gun to his head was heavily built.

Gossett was so frightened that he wet his pants. The State submits that, in light of all the identification evidence, counsel's "failure" to argue that the victim's subjective assessment of Defendant's weight does not meet the requirements of Strickland, *supra*.

## B. Height

According to the booking sheet, Defendant is 6' tall. At various times, Gossett described his assailant as 6', 6'2". 6'3", or 6'4". The State submits that, in light of all the identification evidence, counsel's "failure" to argue that the victim's subjective assessment of Defendant's height deviated by up to 4 inches does not meet the requirements of <u>Strickland</u>, *supra*.

## C. Left Handed

While seeking to represent himself during the remainder of his trial, Defendant told this Honorable Court: "I can prove by these papers that he indicated that the guy was left-handed. Here I am right-handed all my life." In his original police statement, Gossett said: "And he put his arm on my shoulder and pulled the gun out from his pocket. He was left-handed. . . And he pulled the gun out and pointed it in my face." Gossett did not say at trial whether his assailant was right or left-handed, but as he described the robbery, it became clear that the gunman used both hands to restrain Gossett and put the gun to his head.

## D. Earring in Left Ear

Defendant claims counsel was ineffective for failing to argue that Gossett described the gunman as having an earring in his left ear, while Defendant "only has a hole in this right ear." Gossett said nothing about an earring in his original police statement and Defendant was not wearing an earring in the photo Gossett selected from the line-up. It was not until the deposition that Gossett said the guy who put the gun to his head had a little round earring like he saw on "General Hospital" and "As the World Turns." Counsel attempted to impeach Gossett by asking: "The gentleman who pointed this gun at you, you told the police he had an earring, correct?" Gossett denied this, explaining that he identified one of the other robbers at the police station, who was missing two front teeth and had an earring in his left ear.

Gossett consistently maintained that he got a good look a t the gunman's face and would never forget it. The State submits that, in light of all the evidence, counsel's "failure" to impeach the victim with his inconsistent statements about Defendant wearing an earring does not meet the requirements of <u>Strickland</u>, *supra*.

## E. Full Face

Defendant claims counsel was ineffective for falling to argue that Gossett described the gunman as having a "full" face, unlike Defendant's, which 1s "long and narrow." In his police statement, Gossett said the guy he saw was big and his face was full. During deposition Gossett compared the gunman's face to the prosecutors: "But it's a little narrower, his face was a little narrower, and his cheeks were pushed in like this." The State could find no description by Gossett of the gunman as having a "full" face in the trial transcript. The State submits that, in light of all the evidence, counsel's "failure" to argue that the victim's police report description of the gunman as having a full face did not describe Defendant does not meet the requirements of <u>Strickland</u>, *supra*.

## F. Size of Linebacker

Defendant claims counsel was ineffective for failing to reveal to the jury that Gossett described the gunman, who was wearing a Terry Bradshaw Pittsburgh Steelers shirt, as "the size of a professional football linebacker" when there are "water-boys as big as" Defendant. According to the booking sheet, Defendant is medium build. In his police statement Gossett said that the guy who put his hand on his shoulder was "built like a linebacker; a football player linebacker; cause he grabbed me and I felt his grip: it was hard on my shoulder." During trial Gossett testified that the guy who held him from behind and put a gun to his head was "heavily built." Gossett was so frightened that he wet his pants. The State submits that, in light of all the identification evidence, counsel's "failure" to argue that the victim's subjective assessment of his assailant's size did not match Defendant does not meet the requirements of <u>Strickland</u>, *supra*.

Exh. #18 at 4-9.

The court finds that none of petitioner's grounds has any merit.  The record refutes any suggestion that the victim "lie[d]" during the trial.  Petitioner does not allege that counsel was unaware of  the contents of the victim's statement to police; the composite drawing; or the victim's deposition testimony.  In fact, the record reflects that trial counsel did, in fact, cross examine the victim, Mr. Gosset, about his testimony during trial that appeared to be somewhat inconsistent with the victim's prior statement to police and in his deposition.  <u>See</u> TT at 188-195. Moreover, Petitioner fails to show that counsel's decision not to aggressively examine the victim on the stand was not anything more than trial strategy.  In fact, at side bar, trial counsel made clear his plan of action in examining the victim:

> This is very delicate position and I don't want to go after this witness.  I know from discovery he's essentially gone through some special education.  He's a bit learning-challenged, but I can't go after him or else the jury's going to think I'm just a barbarian so I'm just going to try and do it as delicately as I can.

TT at 186, lines 12-19.  "Counsel will not be deemed unconstitutionally deficient because of tactical decisions." <u>McNeal v. Wainwright</u>, 722 F.2d 674, 676 (11th Cir. 1984)(citations omitted).

Based upon a thorough review of the record and the applicable law, it is clear that Petitioner is not entitled to relief on the basis of this claim because the State courts' adjudications of the claim were not contrary to clearly established federal law, did not

-34-

involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings. Consequently, the Court will deny Petitioner's ground alleging trial counsel was ineffective for failing "to impeach the victim upon the lies he told in supporting the State's evidence."

Based upon the foregoing, the Court will deny the Petition with prejudice. Any other claims not specifically addressed are found to be without merit.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.  The Florida Attorney General is **DISMISSED** as a named respondent.

2.  The Petition for Writ of Habeas Corpus (Doc. #1) is **DENIED.**

3.  The **Clerk of the Court** shall enter judgment accordingly and close this case.

**DONE AND ORDERED** in Fort Myers, Florida, on this ___16th___ day of September, 2008.

**JOHN E. STEELE**
**United States District Judge**

SA: hmk
Copies: All Parties of Record

-35-